Ice Co. vs. City et al.

## No. 10,720.

### LOUISIANA ICE MANUFACTURING COMPANY VS. CITY OF NEW ORLEANS ET AL.

| 43 | 217 |
|----|-----|
| 44 | 758 |
| 43 | 217 |
| 47 | 104 |
| 43 | 217 |
| 50 | 507 |
| 43 | 217 |
| 52 | 2101 |
| 43 | 217 |
| 110 | 571 |
| 43 | 217 |
| e115 | 314 |
| 43 | 217 |
| 118 | 715 |

1. There are cases, and especially those in which the public interests represented by a municipal corporation are concerned, in which, under Article 906, C. P., the court may remand causes to the District Court in order that additional testimony may be received and considered; but it is a condition precedent to the exercise of such authority that we should be satisfied that " in the state in which it is" the cause can not be decided according to the requirements of justice.

2. Such an order, when granted, involves the reversal of the judgment appealed from, which can not be done in advance of hearing and submission.

3. The motion to remand in advance of hearing and submission is premature, and the subject matter thereof is referred to the merits to be considered and determined when the latter shall be tried and submitted.

1. From the provisions of Act 333 of 1853, now Section 318, R. S., the riparian owner of any property entitled to the right of accretion can not reduce the batture to private occupation without leaving for public use, without compensation, such portions thereof as may be needed for commerce, public highways and streets.

2. The accretions are enjoyed by the riparian owner subject to the right of the corporation to reserve and use a sufficient portion thereof for public uses, such as levees, highways and streets. To this portion he has no title, and therefore it is unnecessary to expropriate the same.
If more than enough is taken than is required for public uses, the riparian owner can sue for a reduction.

3. The regulation of the dimensions of squares and the width of streets is a matter within municipal discretion, which will not be interfered with without a flagrant abuse of this discretion.

4. When a street is laid out by the city, it is not essential for its continued existence that the city shall immediately grade and improve the street. It is discretionary when further improvement shall be necessary. A failure to improve can not be construed as to abandonment of the street, so as to justify private ownership thereof.

5. The dedication to the public of Water street on the map and plan of the City of Jefferson is sufficient to determine the nature and character of the dedication, and the reservation of that part of the batture for public use. If there were any doubt, the rule is to construe it in favor of the public.

6. No one can acquire by prescription a right against the public to levees, streets and highways over the batture.

7. Where a party in describing his property for the purposes of assessment included a street, and pays for years the taxes assessed against the property, he acquires thereby no title to the street which divides his property.

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*Wm. Grant* and *J. Ward Gurley, Jr.*, for Plaintiffs and Appellees:
After the levee is advanced toward the river, and the batture brought within the dominion of private property by the extinguishment of the public use, and it is taxed and subjected as to possession and use to the will of the owner, a street

can not be opened thereon without compensation being paid to the owner. 7 An. 78.

The Act of 30th April, 1853, Acts of 1883, p. 298, does not require the riparian owner to sue for possession of batture, but gives him the right to sue the municipality if it is withholding from him more of the batture than is necessary for the public use, and to compel the corporation to permit him to enjoy the use and full ownership of such portion of said batture. 13 An. 350.

Water street never was reserved or withheld by the municipal authority upon plaintiffs' property, and it can not now be opened upon that property without compensation being paid therefor, and due proceedings taken according to law. Art. 5, Amendments Constitution United States; Arts. 6, 155 and 156, Constitution Louisiana, 1879.

---

*Howe & Prentiss* and *Carleton Hunt*, City Attorney, for Intervenor and Defendant, Appellants:

1. Acts of sale between third parties of accretionary property can not affect public right to what is necessary for public use. Such right can only be limited by suit under batture law. 12 An. 500; 13 An. 349.
2. The plaintiffs could not acquire or prescribe against the public by fencing or building on batture. 4 Martin 2.
3. Assessment of plaintiffs' property, *en bloc*, from Tchoupitoulas street to river, could not alienate the public right and confer it on plaintiffs.
4. Map of Surveyor Williams of 1860 important and valid evidence in matter of public concern. Greenleaf 1, Chap. 6, 14 Ed.
5. Map of Brown of 1867, made by order of Council and adopted by it, is plain and conclusive assertion that Water street, as part of batture, had been reserved for public use, and this action was had before plaintiffs bought.
6. The lower judge erred in finding no "public necessity" for the ordinance. The Council has decided the question, and as early as 1867, at least, reserved the street, and plaintiffs have never sued to reduce the reservation.
7. No expropriation by the City of Jefferson was necessary, nor is any by New Orleans needful. It is not a question of taking, but of withholding.
8. Jefferson City made compensation for streets laid on in rear of Tchoupitoulas street, but declined to pay for any part of batture.
9. The intervenor made defendant by order of court is entitled to damages in reconvention. Act 50 of 1886.

---

### ON MOTION TO REMAND.

The opinion of the court was delivered by

FENNER, J. The defendant appellants, in advance of fixing or hearing on the merits, present this motion to remand the cause to the court *a qua* for the purpose of receiving and considering certain additional evidence which has been discovered since the date of the decision below, and which is alleged to have a material bearing on the issues.

We have maturely considered the points and authorities adduced in support of the motion, but can not avoid the conclusion that the motion at this time is premature.

Our authority for such action is found in Article 906 of the Code of Practice, which provides: "But if the court shall think it not possible to pronounce definitively on the cause, in the state in which it is, either because the parties have failed to adduce the necessary testimony, or because the inferior court refused to receive it or otherwise, it may, according to circumstances, remand the cause to the lower court, with instructions as to the testimony which it shall receive, to the end that it may decide according to law."

We consider it a condition precedent to the exercise of such authority that we should first determine that it is "not possible to pronounce definitively on the cause, in the state in which it is," meaning of course, by "definitively," a judgment according to conscience and the requirements of justice. It is plain that we can not determine this question without first examining into the merits of the cause, a necessity illustrated by the fact that a considerable portion of the argument on this motion was quite inaptly devoted to the merits.

It is not pretended that the evidence now produced raises any new issue or eliminates any existing issue in the cause. It is admitted to be merely additional and cumulative to evidence already submitted.

It might well be that we may conclude, on examining the merits, that the evidence already submitted was sufficient, or that the evidence now suggested, even if admitted, could not affect our conclusion, or that, for some other reason, we could decide the cause to our satisfaction, "in the state in which it is." In such case, of course the remanding would be unnecessary and improper. The most pertinent precedents cited by movers are the following: Culliver vs. Garric, 13 La. 137; Millaudon vs. Mun., 71 An. 215; Schneider vs. Ins. Co., 30 An. 1198.

In the first two cases the remanding order was made under submission on the merits and after examination thereof. While this does not so clearly appear in the last case, it is inferable from the facts that the court reviews the merits and reverses the judgment appealed from before remanding.

It would be necessary for us to pursue the same course, if we should grant the order prayed for, and it would be most irregular

for us to reverse a judgment appealed from, on a motion like this, before the case has been set for trial, and when the merits of the judgment have never been submitted for our decision.

It is therefore ordered that the motion be, at the present time, denied, and that the subject matter thereof be referred to the merits of the cause, to be considered and determined when the latter shall be tried and submitted.

## ON THE MERITS.

McENERY, J.   The plaintiff company alleges that it is the owner of a certain tract of land, between and extending from Tchoupitoulas street and the Mississippi river and a line in the center of the prolongation of Foucher street to about 115 feet beyond a line in the center of the prolongation of Aline street, with the improvements thereon and rights and privileges and advantages thereunto appertaining, including the right of batture and accretion.

That plaintiff acquired title to said property by purchase in March, 1868, and by subsequent purchases.

For more than twenty years said tract has been inclosed with a fence, and the company has occupied the same with a building for the manufacture of ice, brick vaults, store houses, stable, etc.

For more than thirty years the plaintiff company and its authors have held continuous, undisputed and uninterrupted possession of said tract of land, occupied the same and exercised the rights of full ownership thereof.

That twenty years ago the levee was made by the city of Jefferson, or under its authority, from near the Tchoupitoulas street line of said property, and extended and placed on the front portion of said land was the bank of the river, so as to place said tract of land within the levee.   Since which time the property has been assessed and taxed by the cities of Jefferson and Orleans.   That no part of said property has ever been opened and subjected to the use of the public, except the immediate river bank.   Nor has any right of way, passage, roadway or street been granted or permitted through said property by petitioner, or any of the former owners of said land.

That the City of New Orleans threatens to extend Water street through said property, and to furnish the lines and levels in order to permit the construction and putting down of a railway track of the standard gauge through said property, against petitioners' protest and without compensation.

That the permission to construct said railway through said street is in the aid of a private enterprise, and that there is no public de. mand or necessity for the said extension or opening of said Water street.

That the line where Water street would run through petitioners' property is only ninety to ninety-six feet from Tchoupitoulas street running parallel thereto.

That in front of petitioners' property there is a wide, extending batture, upon which there is an open public road.

That petitioners' ice works, factory, vaults and stables were built with reference to the road on the river front and Tchoupitoulas street, and that if said Water street is extended and the railroad built thereon, said street will run through a brick vault and store-house, rendering it necessary to move said vaults and storehouse, and the division of the property will require additional fencing.

That said City Ordinance No. 3941, C. S., authorizing the exten-sion of said street, is *ultra vires*, null and void, being in violation of Article 5 of the amendment to the Constitution of the United States, and Articles 6, 155, 156 of the Constitution of the State of Louisiana.

An injunction issued as prayed for restrain the execution of said ordinance.

The City of New Orleans answers and alleges that in the year 1866 the property in question between Delachaise and Amelia street, from Magazine to the river, was in one track, undivided by streets, and on the front of said tract Tchoupitoulas or the old river road ran. All the land in front of Tchoupitoulas was batture, across which needful streets for public use could be laid out without expropriation or payment for the right of way.

By ordinance of January 29, 1867, the Council of the City of Jefferson instructed the surveyor, Henry C. Brown, to make a map of said city, and a book of plans for each square, and to fix the grades of the streets by actual survey. The City Surveyor performed this work, made the official map and book of plans, and Water street, from Delachaise to Amelia, and from Louisiana avenue to Upper Line was thereon laid out across said batture, and the map and plans were approved and accepted by said Council of the City of Jefferson on September 2, 1867; other streets were laid out at the same time on the batture; Water street from Louisiana avenue to Upper Line street was lawfully laid out and opened many years ago; that any

and all obstructions placed thereon by plaintiffs are unlawful, and that in no event can plaintiffs claim compensation for needful streets laid out by the City of Jefferson, or its successor, the City of New Orleans.

The defendant, the City of New Orleans, prays for a dissolution of the injunction, specially reserving the right to sue for damages.

The "Independent Cotton Oil Company, Limited," which is interested in the extension of said street, and to which was given the privilege of operating the railroad to be conducted along said street, filed a petition of intervention, joining the City of New Orleans, the defendant, and urging the same defences.

There was judgment for the plaintiffs, perpetuating the injunction, dismissing the intervention of the Independent Cotton Oil Company, and its reconventional demand. The defendant and intervenor have appealed.

The property through which Water street runs is an increasing batture. Tchoupitoulas street was originally the front street. The increase of the batture has made it necessary for the convenience of the public, and in the interest of commerce, to lay out several streets between Tchoupitoulas and the river, some parallel and others perpendicular to the river. Squares have been laid out. They are small—less than the ordinary square, from ninety to ninety-six feet front. These squares are, however, not exceptional. In other portions of the city on the river front there are squares of like dimensions. The peculiar conditions, the geographical location of the city, and the accretion and losses from the Mississippi river render the size of these squares a necessity.

There is the same necessity to divide these squares by streets as to separate the larger ones, located in other portions of the city. There is no reason then, because there is a less distance between streets, that they should not exist.

But the regulation of the size of streets and squares is a matter within the discretion of the City Council, and it would only be in case of flagrant abuse of this discretion, by which the vested rights of the citizen would be disturbed, that courts would interfere with that discretion. It is not a question then as to the width of the street or the size of the square that can determine the right of the city to open a street on batture property. This part of the plaintiffs' petition may then be dismissed without further consideration.

In 1860 the batture had so increased that Water street was laid out. This is clearly shown by the map and plan of City Surveyor Williams, found in the record. In 1867 the City Council of Jefferson City ordered the actual survey of the batture property by the City Surveyor, Henry C. Brown.

The resolutions ordering the survey were adopted on the 29th of January, 1867. That Water street then existed as shown on the Williams plan of Jefferson City is evident from the first resolution of the Council, as follows: "A general plan of the city, showing the squares, as already denoted, and those properties not now divided into squares; said squares to be numbered. No. 100 to be the square bounded by Toledano, Levee, Water streets and Louisiana avenue. Said numbers to run up and down the river alternately, and running from one hundred and upwards. Said plan shall show the exact dimensions of each square, banquette and street to be thereon subscribed, and to be given from an actual survey to be made by him."

In pursuance of this resolution, the survey and the plan were made. The indicated squares were divided and the streets located. The plan, which was adopted by the City Council, shows Water street, located and well defined from Louisiana avenue to Upper Line street. The plaintiff acquired the property through which this street runs one year after the above survey and plan was adopted by the Council, and eight years after the location of the street by Williams, the City Surveyor.

The street had an existence, which was recognized by the Council of Jefferson City in 1867, when said street was made one of the boundaries of the new square No. 100. Buildings had been erected fronting on said street, and it had been in part graded, and banquettes had been made on portions of it. But in the vicinity of plaintiffs' property it seems it had not been graded, nor had banquettes been made.

For the purpose of erecting their buildings for the ice factory, lines had been furnished the company with reference to the existence of Water street. The company therefore knew of the existence and location of the street.

The location of the street and its dedication to the public in part is not denied, but opposition is made to its extension—that is to the

improvement of the street, which will interfere with plaintiffs' buildings located in part in said street, and the dividing of its property.

The street having been reserved from the batture for public use, located and partially improved, it was discretionary with the city to determine when its further improvement should be necessary.

In the case of Shea vs. City of Ottawa, 67 Iowa 39, the court said:

"But it is urged that there was no acceptance of the dedication by the public or by the city for the public for more than thirty years after the dedication when the street was graded. It is shown that the street remained uninclosed; that the land was rough and hilly, and for that reason it was but little used by the public. It appears that when the wants of the public demanded it, the city proceeded to grade the street at the point in dispute.

"It would not do to hold that the only streets dedicated to the public over hilly, rough land would revert to the dedicator if they were not improved and used by the public until the wants of the public travel demanded it. In some of the cities of this State there are streets in some portions thereof over which no vehicle or horse has passed, and yet they were dedicated more than thirty years ago. They have not been used because until graded they are incapable of use. The dedication will be presumed by the law to have contemplated this state of things and imposed no condition upon the public to use the street until the public wants demanded and secured this improvement." Meier vs. Portland, 19 Pacific Railroad 610; Elliott on Roads and Streets, p. 89, note.

The dedication of Water street was statutory, and imposed no conditions, and was made in reference to the future development of the City of Jefferson.

The reservation of a part of the batture property for streets, and the location of Water street, was not an expropriation of private property for public uses.

Act 333 of 1853, now Section 318, R. S., provides that:

"Whenever the riparian proprietor of any property in the incorporated towns or cities in the State is entitled to the right of accretion, and batture has been formed in front of his land more than is necessary for public use, which the corporation withholds from him, he shall have a right to institute suit against the corporation for so much of the batture as may not be necessary for public use; and if it be determined by the court that any portion of it be not necessary,

Ice Co. vs. City et al.

for public use, it shall decree that the owner is entitled to the property, and shall compel the corporation to permit him to enjoy the use and ownership of such portion of it."

As stated in Remy vs. Second Municipality, 11 An. 161, the several acts of the Legislature giving the city police powers over the batture were not intended to change or disturb the rights of property.

The City of Jefferson, when the batture was formed, had a right to determine to what extent the riparian proprietors might take possession of the batture. Remy vs. Second Municipality, 12 An. 500.

From the terms of Act 333 of 1853 (R. S., Sec. 318), the riparian owner of any property entitled to the right of accretion can not reduce the batture to private occupation without leaving, for public use without compensation, such portions thereof as may be needed for commerce, public highways and streets. Sarpy vs. City of N. O., 13 An. 349.

The accretions are enjoyed by the riparian owner subject to the right of the corporation to reserve and use a sufficient portion thereof for public uses such as levees and streets. To this portion he has no right or title, and therefore to expropriate would be unnecessary.

The sale of the property to plaintiffs by the original riparian proprietor could not convey to the company any greater rights than the vendor possessed. The City of Jefferson, by statutory dedication, owned that part of. the batture necessary for public uses, and the vendor of plaintiffs could not convey title to it. Before the purchase by plaintiffs the City of Jefferson had designated that part of the batture that was needed for Water street. The plaintiffs could not defeat the city's right to that portion of the batture by sale to a third party.

The dedication of the street by the City of Jefferson on the map and plans in evidence does not render it difficult to determine the extent of the street. It is marked its entire length. If there were any doubts the rule is to construe the dedication so as to benefit the public. Elliott on Roads and Streets, p. 111.

The plaintiff built the vaults and fences on the street. These acts were in themselves unlawful, and he therefore can not make them the basis for a plea of prescription, as he can not take advantage of his own wrong.

The plaintiff, even though he was ignorant of the rights of the

city to said street, can not, by placing buildings and fences thereon, prescribe against the public right to passage, ways, streets and high-ways over the batture.

It is urged that the assessment and collection of taxes by the cities of Jefferson and New Orleans on said property operates as an estoppel to the right of the City of New Orleans to open said street.

The law requires the owner of property to hand in a description of the property to the Assessors.

The property was described as extending to the river from Tchoupitoulas street. Water street divided the property, and was used by the public.

The property owned by plaintiffs was assessed as described by him, and because he described it including the street that divided the property certainly can give him no title to the street. There was no separate valuation to the part of the street which was included in the description of the assessed property.

No part of plaintiffs' property is reserved for public use upon which he has paid taxes.

The street in question was never owned by him. The property owned by plaintiffs only has been assessed and taxes collected thereon.

The street having been located by the City of Jefferson, to whose rights the City of New Orleans succeeds, when the cities were consolidated the latter city had a right to authorize the construction of a railroad through the street.

The intervenor is not entitled to damages on the reconventional demand.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now ordered that there be judgment in favor of defendant and intervenor; refusing the demand of plaintiff, and the injunction issued herein be dissolved. It is further ordered that the reconventional demand of the intervenor be rejected, appellees to pay costs.